1                                                       Honorable James L. Robart

2

3

4                           UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON

5                               AT SEATTLE

6 WASTE ACTION PROJECT,         )
                                    )

7            Plaintiff,         )      CASE NO. 2:19-cv-01406-JLR
                                    )
    v.                         )

8                                       )     [PROPOSED] CONSENT DECREE
XPO LOGISTICS FREIGHT, INC.,     )

9                                       )
          Defendant.        )

10                                       )

11

# I. STIPULATIONS

12

13      Plaintiff Waste Action Project filed a complaint against Defendant XPO Logistics

14 Freight, Inc. ("XPO") on September 3, 2019 (the "Complaint"), alleging violations of the Clean

15 Water Act ("CWA"), 33 U.S.C. § 1251 et seq., relating to discharges of stormwater and other

16 pollutants associated with industrial activities from XPO's facility, located at 400 Southwest

17 34th Street, Renton, Washington 98055 (the "Facility") and seeking declaratory and injunctive

18 relief, civil penalties, and attorneys' fees and costs.

19      Waste Action Project and XPO agree that settlement of these matters is in the best

20 interest of the parties and the public, and that entry of this Consent Decree is the most

21 appropriate means of resolving this action.

22      Solely for the purposes of this Consent Decree, Waste Action Project and XPO

23 (collectively, the "Parties") stipulate that the Court has jurisdiction over the Parties and the

24 subject matter of this action under section 505(a) of the CWA, 33 U.S.C. § 1365(a).

[PROPOSED] CONSENT DECREE - 1

1   The Parties stipulate to the entry of this Consent Decree without trial or adjudication of

2   any issues of fact or law regarding Plaintiff's claims and without any stipulations other than

3   those expressly provided in this Consent Decree.

4       The signatories for the Parties certify that they are authorized by the party they represent

5   to enter into these Stipulations and this Consent Decree.

6       DATED this 2nd day of June        , 2020

7

8   XPO LOGISTICS FREIGHT, INC.          WASTE ACTION PROJECT

9   By:   _C S. gc b_                    By:   _Greg Wingard_
10        Christopher J. Signorello            Greg Wingard
          Senior Vice President                Executive Director
11        Litigation Counsel

12
                      II.   ORDER AND DECREE
13

14      THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of

15   Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations

16   and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as

17   follows:

18       1.    This Court has jurisdiction over the parties and subject matter of this action.

19       2.    Each signatory for the parties certifies for that party that he or she is authorized to

20   enter into the agreements set forth below.

21       3.    This Consent Decree applies to and binds the parties and their successors and

22   assigns.

23

24

    [PROPOSED] CONSENT DECREE - 2

4.     This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by XPO at the Facility located at 400 Southwest 34th Street, Renton, Washington 98055.

5.     This Consent Decree is a full and complete settlement and release of all the claims in the Complaint and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted against XPO and/or its parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, current and former employees, attorneys, officers, directors, and agents under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations of the Facility. These claims are released and dismissed with prejudice. Enforcement of this Consent Decree is Waste Action Project's exclusive remedy for any violation of its terms, including any subsequent violation of the National Pollutant Discharge Elimination System Permit No. WAR004630 ("the Permit"), or any successor, modified, or replacement permits, occurring prior to termination of the Consent Decree.

6.     This Consent Decree is a settlement of disputed facts and law. This Consent Decree is not an admission or adjudication regarding any specific allegations by Waste Action Project in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of XPO.

7.     Prior to executing this Consent Decree, XPO performed the following actions as part of its efforts to resolve this litigation:

      a.     XPO completed an initial full facility vacuum sweep. This included moving parked trailers to ensure all paved areas below the trailers were vacuum swept.

[PROPOSED] CONSENT DECREE - 3

b.     XPO verified that any stormwater or spills within the fuel island go to the

fuel island oil/water separator. The grade of the pavement under the fuel island

cover is sloped toward the center drain. Additionally, there are parallel berms on

west and east sides of the fuel island. These design features ensure that a spill

occurring within the fueling lane of the fuel island will go into the center drain.

XPO verified that the center drain is connected to an oil/water separator that is in

turn connected to the sanitary sewer.

c.     XPO eliminated the windshield cleaning station and corresponding on-site

windshield washing activities by individual truck drivers. XPO plans to continue

its practice of periodic on-site closed-loop (zero discharge) truck washing

operations through its truck washing vendor in compliance with the Permit.

8.     XPO agrees to the terms and conditions identified below in paragraphs 9-41 in

full and complete satisfaction of all the claims covered by this Consent Decree:

9.     XPO will maintain compliance with the Clean Water Act and all conditions of the

Permit and any successor, modified, or replacement permits, subject to the agreed to time periods

for implementing corrective actions and Best Management Practices ("BMPs") set forth in

Paragraphs 10 through 20 alleged to be necessary for full compliance with the Permit.

**Corrective Actions and BMPs**

10.     XPO agrees to fully implement the following corrective actions and BMPs, set

forth at paragraphs 11 through 20, within seven (7) days of entry of this Consent Decree, unless

specified otherwise below.

11.     XPO will install catch basin inserts designed to remove zinc and copper in each

Facility catch basin within 30 days of entry of the Consent Decree.

[PROPOSED] CONSENT DECREE - 4

12.     Following installation of the catch basin inserts, XPO will document and maintain catch basin inserts to the extent required by the Permit and the Stormwater Management Manual for Western Washington (SWMMWW).

13.     Within six months of entry of the Consent Decree, XPO will perform repairs to pavement and drainage systems throughout the facility, including select catch basins, as detailed in Exhibit A to this Consent Decree.

14.     Within six months of entry of the Consent Decree, XPO will install berms on the north and south ends of the fuel island, as set forth in Exhibit A to this Decree. The north and south berms will be a second level of precaution to ensure that any spill experienced within the fueling lane of the fuel island will go into the center drain connected to the oil/water separator and, in turn, into the sanitary sewer.

15.     XPO will conduct regular Facility walk downs and inspections to remove garbage and debris, no less frequently than once a week.

16.     XPO will perform quarterly sweeping of paved surfaces of the Facility with a vacuum sweeper (or a sweeper with a vacuum attachment) in conjunction with the use of mechanical sweepers and/or manual sweeping as necessary to access any pavement areas a vacuum sweeper is unable reach. XPO corporate management will assume oversight over sweeping vendor selection, scope of work, and performance. XPO will submit photographic documentation of vacuum sweeping results received from the vendor to Waste Action Project as part of the documentation submission discussed in paragraph 27 below.

17.     In the event that the Facility exceeds a Permit benchmark during the term of this Consent Decree, XPO will evaluate increasing sweeping frequency beyond Permit and SWMMWW requirements as part of the corrective action process.

[PROPOSED] CONSENT DECREE - 5

18.     XPO will verify that the current storage of any hazardous substances, petroleum/oil liquids, or other chemical solid or liquid materials that have potential to contaminate stormwater within the perimeter of the fuel island comply with the requirements of Condition S3.B.4.b.i.4 of the Permit. XPO will upgrade secondary containment as necessary to comply with Condition S3.B.4.b.i.4 of the Permit. As part of this work, XPO will replace the current containment system for three 55 gallon drums (consisting of a metal trough under the fuel island cover) with one or more spill pallets sufficient to ensure the requirements of Condition S3.B.4.b.i.4 of the Permit are met.

19.     XPO will not store fuel or petroleum products in open containers on top of barrels.

20.     XPO will ensure there is proper signage on the Facility's fuel island spill kit and that the kit contents are adequate and properly stored.

**Enhanced Sampling**

21.     XPO will sample discharges from its designated sample point during at least two different stormwater discharge events (i.e., separated by at least 24 hours without precipitation) in the first, second, and fourth quarters of 2020, and first and second quarters of 2021, in each case subject to the occurrence of qualifying storm events.

22.     XPO will sample the first fall storm event in accordance with Condition S4.B.1.b. of the Permit for the duration of the Consent Decree and will pay a stipulated penalty of $5,340 per violation if it fails to do so. Payments under this paragraph will be made in the same manner, to the same payee, as the payment in lieu of penalty identified in paragraph 30 of this Consent Decree.

[PROPOSED] CONSENT DECREE - 6

23. Within 30 days of entry of this Consent Decree, XPO will update its SWPPP as necessary to ensure the sampling plan in its SWPPP complies with the Permit as well as reflects enhanced sampling required by this Consent Decree.

24. XPO will ensure that any employee(s) responsible for conducting sampling and reporting sampling results are trained on the SWPPP and Permit procedures for doing so.

**SWPPP Revisions**

25. Within 30 days of entry of this Consent Decree, XPO will update its SWPPP as necessary to include any BMPs required by the Permit, current SWMMWW, or this Consent Decree, as well as the to reflect the enhanced sampling required by paragraph 21 of this Consent Decree. The updated SWPPP will include reference to the catch basin inserts required by paragraph 11 of this Consent Decree and their maintenance to the extent required by the Permit and SWMMWW.

26. XPO will ensure its SWPPP site map complies with the requirements set forth in Condition S3.B.1 of the Permit.

27. XPO will provide Waste Action Project with a copy of its updated SWPPP including the updated site map within 30 days of entry of the Consent Decree.

**Miscellaneous Items**

28. XPO will provide copies of documentation evidencing compliance with the terms of this Consent Decree, along with copies of all sample lab reports, discharge monitoring reports, modifications to permit coverage, and all other submissions to and communications with Ecology concerning its Permit and compliance efforts to Waste Action Project on a quarterly basis for the term of this Consent Decree, which term is defined in paragraph 40.

[PROPOSED] CONSENT DECREE - 7

1    29.    XPO will allow Waste Action Project and its expert to inspect the Facility at a

2    mutually agreeable time approximately one year from the date of entry of this Consent Decree to

3    evaluate compliance with the Permit.

4    30.    XPO will pay the reasonable costs of Waste Action Project's follow-up inspection

5    agreed to in paragraph 29 above, up to $3,000 total.

6    **Payment in lieu of Penalty**

7    31.    Not later than sixty (60) days after the entry of this Consent Decree by this Court,

8    XPO will pay $137,500.00 (ONE HUNDRED THIRTY SEVEN THOUSAND FIVE

9    HUNDRED DOLLARS) to the Green River Community College Foundation for projects to

10   improve the water quality and aquatic habitat of the Mill/Springbrook Creek, Black River, and

11   Green/Duwamish River watersheds.   The check will be made to the order of Green River

12   Community College Foundation and delivered to George Frasier, 12401 SE 320th St., Auburn

13   WA 98092-3622.  See Exhibit B for a verification letter from Green River Community College

14   Foundation.  Payment will include the following reference in a cover letter or on the check:

15   "Consent Decree, Waste Action Project v. XPO Logistics, 2:19-cv-01406-JLR."  A copy of the

16   check and cover letter, if any, will be sent simultaneously to Waste Action Project and its

17   counsel.

18   **Payment of costs and fees**

19   32.    Within sixty (60) days of entry of this Consent Decree by the Court, XPO will pay

20   Waste Action Project's reasonable litigation fees, expenses, and costs (including reasonable attorney

21   and expert witness fees) of $38,350 (THIRTY EIGHT THOUSAND THREE HUNDRED FIFTY

22   DOLLARS) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle,

23   WA 98112, attn: Claire Tonry. This payment is full and complete satisfaction of any claims Waste

24

[PROPOSED] CONSENT DECREE - 8

1     Action Project may have against XPO under the Clean Water Act for fees and costs.

2     **Force Majeure**

3        33.     A force majeure event is any event outside the reasonable control of XPO that

4     causes a delay in performing tasks required by this Consent Decree that cannot be cured by due

5     diligence. Delay in performance of a task required by this Consent Decree caused by a force

6     majeure event is not a failure to comply with the terms of this Consent Decree, provided that

7     XPO timely notifies Waste Action Project of the event; the steps that XPO will take to perform

8     the task; the projected time that will be needed to complete the task; and the measures that have

9     been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting

10     from delay in completing the task.

11        34.     XPO will notify Waste Action Project of the occurrence of a force majeure event

12     as soon as reasonably possible but, in any case, no later than fifteen (15) days after XPO

13     becomes aware of the event. In such event, the time for performance of the task will be extended

14     for a reasonable period of time following the force majeure event.

15        By way of example and not limitation, force majeure events include

16            a.     Acts of God, war, insurrection, or civil disturbance;

17            b.     Earthquakes, landslides, fire, floods;

18            c.     Actions or inactions of third parties over which defendant has no control;

19            d.     Unusually adverse weather conditions;

20            e.     Restraint by court order or order of public authority;

21            f.     Strikes;

22            g.     Any permit or other approval sought by XPO from a government authority

23     to implement any of the actions required by this consent decree where such approval is

24

[PROPOSED] CONSENT DECREE - 9

1   not granted or is delayed, and where XPO has timely and in good faith sought the permit

2   or approval;

3       h.      Litigation, arbitration, or mediation that causes delay; and

4       i.      Subsequent developments related to the COVID-19 pandemic causing a

5   delay in performing tasks required by this Consent Decree that cannot be cured by due

6   diligence.

7       35.     As of the date of execution of this Consent Decree, the Parties anticipate that the

8   deadlines herein will be met despite the ongoing COVID-19 pandemic.  However, the Parties

9   acknowledge that a subsequent development related to the COVID-19 pandemic causing a delay

10  in performing tasks required by this Consent Decree that cannot be cured by due diligence would

11  constitute a new force majeure event.  In that event, XPO will follow the procedures in paragraph

12  34 of this Consent Decree.

13  **Dispute Resolution**

14      36.     This Court retains jurisdiction over this matter. And, while this Consent Decree

15  remains in force, this case may be reopened without filing fee so that the parties may apply to the

16  Court for any further order that may be necessary to enforce compliance with this Consent

17  Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree.

18      37.     Informal Dispute Resolution: In the event of a dispute regarding implementation

19  of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute

20  by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a

21  meeting should be held as soon as practical, but must be held within thirty (30) days after written

22  notice of a request for such a meeting to the other party and its counsel of record ("Notice"). The

23

24

[PROPOSED] CONSENT DECREE - 10

1 ~~parties may mutually agree to extend the time to conduct that meeting beyond thirty (30) days of~~

2 the Notice.

3      38.    Formal Dispute Resolution: If no resolution is reached at the information dispute

4 resolution meeting set forth in paragraph 36, or within thirty (30) days of the Notice, whichever

5 is later, either party may file a motion with this Court to resolve the dispute. The provisions of

6 section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of

7 litigation (including reasonable attorney and expert witness fees) to any prevailing or

8 substantially prevailing party, will apply to any proceedings seeking to enforce the terms and

9 conditions of this Consent Decree.

10 **Miscellaneous Provisions**

11      39.    The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent

12 judgment can be entered in a Clean Water Act suit in which the United States is not a party prior

13 to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the

14 U.S. Attorney General and the Administrator of the U.S. EPA. Therefore, upon the filing of this

15 Consent Decree by the parties, Waste Action Project will serve copies of it upon the

16 Administration of the U.S. EPA and the Attorney General.

17      40.    This Consent Decree will take effect upon entry by this Court. The Consent

18 Decree terminates two years after that date, or upon completion of all obligations imposed in

19 paragraphs 11 through 20 of this Consent Decree and payment of any sums due under the

20 Consent Decree at that time, whichever is later.

21      41.    Both parties have participated in drafting this Consent Decree.

22

23

24

[PROPOSED] CONSENT DECREE - 11

1    ~~42.    This Consent Decree represents the entirety of all covenants, representations, and~~

2    warranties, express or implied, oral or written, between the parties concerning the subject matter

3    of this Consent Decree.

4    43.    In the event that Permit driven enhancements of BMPs would be inconsistent with

5    a BMP currently set forth in this Consent Decree, the Parties may replace the inconsistent BMP

6    with the enhanced BMP(s) by written agreement without the approval of the Court. All other

7    modifications to this Consent Decree may be modified only upon the approval of the Court.

8    44.    This Consent Decree shall be governed by the law of the United States, and where

9    applicable, the laws of the State of Washington.

10   45.    If for any reason the Court should decline to approve this Consent Decree in the

11   form presented, this Consent Decree is voidable at the discretion of either party. The parties

12   agree to continue negotiations in good faith in an attempt to cure any objection raised by the

13   Court to entry of this Consent Decree.

14   46.    Notifications required by this Consent Decree must be in writing. The sending

15   party may use any of the following methods of delivery: (1) personal delivery; (2) registered or

16   certified mail, in each case return receipt requested and postage prepaid; (3) a nationally

17   recognized overnight courier, with all fees prepaid; or (4) email. For a notice or other

18   communication regarding this Consent Decree to be effective, it must be delivered to the

19   receiving party at the one or more addresses listed below or to any other address designated by

20   the receiving party in a notice in accordance with this paragraph.

21   **If to Waste Action Project:**

22   Greg Wingard
     Waste Action Project
23   P.O. Box 9281
     Covington, WA 98042
     Email to: gwingard@earthlink.net
24

[PROPOSED] CONSENT DECREE - 12

**And to:**

Meredith Crafton
Smith & Lowney PLLC
2317 East John St.
Seattle, WA  98112
Email to: Meredith@smithandlowney.com

**If to XPO:**

XPO Logistics
Five American Lane
Greenwich, CT 06831
Attention: Legal Department
Email to: chris.signorello@xpo.com, Jeff.Sexten@xpo.com, and jessica.mayes@xpo.com

**And to:**

Erika H. Spanton
Richard S. Davis
Beveridge & Diamond PC
600 University Street, Suite 1601
Seattle, WA  98101
Email to: rdavis@bdlaw.com, espanton@bdlaw.com, and adegraff@bdlaw.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it then upon that rejection or refusal; or (c) for notice or other communication provided by e-mail, upon sending the e-mail to the above listed addresses unless the party providing the notice or other communication receives notice delivery of the e-mail failed.

[PROPOSED] CONSENT DECREE - 13

1   DATED this __3__ day of __August__, 2020.

2

3

4                                                    _____
                                                     HON. JAMES L. ROBART
5                                                    UNITED STATES DISTRICT JUDGE

6   Presented by:

7   BEVERIDGE & DIAMOND PC

8   By:   _Mary h. Williams_
          Erika H. Spanton, WSBA No. 46992
9         Tracy Williams, WSBA No. 35239
          Richard S. Davis, *Pro Hac Vice*
10        600 University Street, Suite 1601
          Seattle, WA 98101
11        Attorneys for Defendant
          XPO Logistics Freight, Inc.
12

13  SMITH & LOWNEY PLLC

14  By:   /s/ Claire E Tonry
          Claire E. Tonry, WSBA No. 44497
15        Meredith Crafton, WSBA No. 46558
          2317 E. John St.
16        Seattle, WA 98112
          Attorneys for Plaintiff
17        Waste Action Project

18

19

20

21

22

23

24
    [PROPOSED] CONSENT DECREE - 14

# EXHIBIT A

## Pavement Repair Scope – Renton, WA

1. Mill and replace areas 4,5,6,7, 13 and approx. 3,500 sf of section 12 (please see attached mapping)
2. Remove and replace concrete section at NE corner of yard 34' X 22" (approx. 750 sf)
3. Remove and replace gravel section at NE corner of yard 77' X 52' (approx. 4,000 sf)
4. Crack fill/seal approx. 5,150 LF
5. Seal Coat approx. 167,885 sf
6. Install a berm on both ends of the fuel island drive lane
7. Re-stripe parking lot
8. Repair or replace 19 catch basins.
    a. Saw cut 100 sq ft area around catch basins
    b. Excavate. haul and dispose of asphalt and native materials to access pipe and catch basin
    c. Remove and dispose of damaged risers where applicable
    d. Realign existing concrete risers. clean for new grout where applicable
    e. Cut pipe at entrance and exit where applicable
    f. Remove. haul and dispose of pipe and catch basin where applicable
    g. Rebed with crushed rock base course
    h. Install new Type I catch basin, set to grade
    i. Cut new pipe to length where applicable
    j. Install pipe coupler gaskets where applicable
    k. Install new pipe to new catch basin where applicable
    l. Grout pipe interior sealing all joints. pipes and access points
    m. Back fill pipe and catch basin with imported crushed rock base course
    n. Install #4 rebar in two foot grid. do☒el into surrounding asphalt
    o. Place and finish with 4" of 5 sack 4.000 psi concrete
    p. Remove forms after cure
    q. Clean inside edges and apply SS-1 tack
    r. Pave 2' perimeter to new concrete collar with 4" or HMA installed and compacted in two 2" lifts
    s. Seal edges with hot rubberized sealer

**Appendix: Pavement Section Detail**









# Exhibit B

**Green River**
COLLEGE FOUNDATION

12401 SE 320th Street
Auburn, WA 98092-3622
(253) 288-3330

greenrivercollegefoundation.org

June 6, 2020

Re: XPO Logistics Freight, Inc.

Consent Decree Case No. 2:19-cv-01406-JLR

To Whom It May Concern:

Green River College Foundation is an institutionally related Foundation and is a stand-alone 501(c)(3) nonprofit, EIN 51-0168649. Within the mission of the Foundation, providing resources to assist Green River College in achieving educational excellence, are the strategic priorities: to remove financial barriers for students, create pathways to good living wage careers, and provide resource capacity for college programs. The Green River College Natural Resources Program is a CTE program of Green River, and students are engaged in a variety of experiential learning projects that have value to the natural resources and ecological welfare in our community.

We have reviewed the consent decree that provides payment in the amount of $137,500.00 from XPO LOGISTICS FREIGHT, INC. to the Green River College Foundation. The funding provided will be used to pay for projects focused on improved water quality in the Green River watershed. Work may include invasive plant control, native planting, and other stewardship activities conducted by or through the Green River College Natural Resources Department. This work is in partnership with existing conservation organizations and local governments engaged in water quality related conservation projects in the Green River, and its tributaries.

No money received under the proposed consent judgment will be used for political lobbying activities; and following the expenditure of funds provided by the settlement instrument Green River College Foundation will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.

Please do not hesitate to contact us with questions or for additional information.

Sincerely,

George P. Frasier,
Vice President for Advancement
Green River College Foundation